CORA MENDEL v. CLAIRE MENDEL, Individually and as Executor of and Under the Last Will and Testament of Albert Mendel, deceased, *et al.*

1 So. (2nd) 571
En Banc
Opinion Filed June 25, 1940
Rehearing Denied April 8, 1941

*P. R. Porter, B. K. Roberts* and *J. Lewis Hall,* for Appellant;

*Peters & Kemp* for Appellees and *Claire Mendel,* Attorney for Claire Mendel, Individually, himself, Appellee;

*E. C. McClurg,* as *Amicus Curiae.*

PER CURIAM.—The appeal here presents to this Court for review and determination the sufficiency of the evidence adduced to show whether or not a common-law marriage existed between the late Albert Mendel and Cora Doodkorte Mendel. Albert Mendel died testate in Hillsborough County, Florida, leaving a considerable estate and Cora Doodkorte Mendel, after his death, filed an amended bill of complaint in the Circuit Court of Hillsborough County seeking a

decree establishing a common-law marriage between her and the late Albert Mendel. An answer was filed and considerable testimony was offered by the respective parties and the lower court on final hearing denied the relief sought by the prayer of the amended bill and dismissed the same, and therefrom an appeal has been perfected to this Court.

The law controlling common-law marriage in Florida is well established. See LeBlanc v. Yawn, 99 Fla. 328, 126 So. 789; Orr v. State, 129 Fla. 398, 176 So. 510; Marsicano v. Marsicano, 79 Fla. 278, 84 So. 156; Caras v. Hendrix, 62 Fla. 446, 57 So. 345; Catlett v. Chestnut, 107 Fla. 498, 146 So. 246; Chavis v. Chavis, 79 Fla. 602, 84 So. 672.

The plaintiff below by her mother and a Mrs. Morton sought to establish that on the 16th day of February, 1933, Albert Mendel and Cora Doodkorte announced that they had agreed to become husband and wife and shortly thereafter the record shows that the parties lived and cohabited together as husband and wife until the death of Albert Mendel in January, 1938. The evidence was conflicting as to whether the relation of husband and wife existed between Albert Mendel and Cora Doodkorte or whether the relation of housekeeper existed between Cora Doodkorte Mendel and the deceased Albert Mendel. The lower court held that the relation of husband and wife did not exist but that of housekeeper existed between the late Albert Mendel and Cora Doodkorte Mendel.

Cora Doodkorte Mendel made a written statement to the effect that she was a widow when she desired her mother's entrance to a hospital as a charity patient in Tampa, and that she likewise claimed a widow's exemption both in Hillsborough County and

the City of Tampa. The chancellor below held that a common-law marriage between these parties did not exist and we find ample testimony to sustain his conclusion.

The decree appealed from is affirmed.

TERRELL, C. J., WHITFIELD, BROWN and THOMAS, J. J., concur.

BUFORD and CHAPMAN, J. J., dissent.

BUFORD, J., dissenting.—I have carefully considered the record in this case and it appears to me that the status of common-law marriage was clearly and fully established.

Once it has been established that a common-law marriage was consummated, then the legal status of the parties as husband and wife becomes fixed and cannot be dissolved by subsequent conduct of the parties, but can only be dissolved by death or decree of a court of competent jurisdiction. See Cargile v. Wood, 63 M. 501 Am. Rep.; Badger v. Badger, 88 N. Y. 546, 42 Am. Rep. 263; Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826; Hullett v. Carey, 66 Minn. 327, 61 Am. St. Rep. 419; Peters v. Peters, 73 Colo. 271, 215 Pac. 128, 33 A. L. R. 24; Coad v. Coad, 87 Neb. 290, 127 N. W. 455.

So it is, the decree should be reversed.

CHAPMAN, J., dissenting.—The question presented for a decision to this Court on appeal from the Circuit Court of Hillsborough County, Florida, is whether or not a common-law marriage on February 16, 1933, was entered into between Albert Mendel and Cora Doodkorte Mendel. The record shows that each of the parties on that date was above twenty-one years of age and competent to contract marriage. During the month of January, 1938, Albert Mendel died and for

several years prior to his death was a widower and lived at Sulphur Springs, a suburb of Tampa, Florida, and was a dealer in diamonds and jewelry. For a number of years Cora Doodkorte lived at Sulphur Springs with her husband, who died around the year 1929; and while operating a jewelry store she made the acquaintance of Albert Mendel, who called upon jewelry stores to sell and otherwise dispose of diamonds and jewelry.

There is testimony that on February 16, 1933, Cora Doodkorte Mendel and Albert Mendel went to the home of Mrs. Volmary, mother of the plaintiff, and each told Mrs. Volmary that they had agreed to become husband and wife under the laws of Florida and did not care to have a ceremonial marriage, and then and there admitted that they were husband and wife. On the same evening the parties went to the home of Mrs. Morton and each stated that they were husband and wife and had agreed to live in the future as husband and wife under the laws of Florida, and Cora Doodkorte Mendel exhibited a ring which she stated was given to her by Albert Mendel as a wedding ring and contained the initials of the contracting parties. The parties after the 16th of February, 1933, resided at Albert Mendel's home in Sulphur Springs and this relationship continued until the death of Albert Mendel in January, 1938.

The plaintiff below filed suit to have the court decree the existence of a common-law marriage between appellant, Cora Doodkorte Mendel, and Albert Mendel. There is but little, if any, contradiction about the statements of Cora Doodkorte Mendel and Albert Mendel on February 16, 1933, to Mrs. Volmary and Mrs. Morton. There is a sharp conflict in the testi-

mony on whether or not Cora Doodkorte Mendel and Albert Mendel lived and cohabited together after February 16, 1933. Several witnesses testified that Albert Mendel, after January 16, 1933, and prior to his death introduced Cora Doodkorte Mendel to many people in different towns in southern Florida as his wife. This is clearly established by testimony of W. D. Bush, chief of detectives, Tampa; Mrs. Alice Roberts, Tampa; Hart Walstead, Orlando; W. H. Lytle, Bartow; Cecil Hardee, Sulphur Springs; Sophie R. Nowles, Sulphur Springs; C. L. Pruyn, Winter Park; N. E. Wheeler, and Meyer Berkman, Orlando; Josiah Richardson, Tampa, and Bert Curtis, Sulphur Springs. There is evidence of cohabitation between Cora Doodkorte Mendel and Albert Mendel as shown by the testimony of draymen moving some trunks from the Mendel home to the station and by book records of a tourist camp in New York. There is evidence of a wedding ring purported to have been given by Albert Mendel to Cora Doodkorte Mendel, but the ring was not offered in evidence. This court has on numerous occasions determined the sufficiency of evidence to sustain a common-law marriage. See LeBlanc v. Yawn, 99 Fla. 328, 126 So. 789; Orr v. State, 129 Fla. 398, 176 So. 510; Marsicano v. Marsicano, 79 Fla. 278, 84 So. 156; Caras v. Hendrix, 62 Fla. 446, 57 So. 345; Catlett v. Chestnut, 107 Fla. 498, 146 So. 246.

Counsel for defendants below contend that a common-law marriage was never entered into, but that the relation of employer and employee existed between Albert Mendel and Cora Doodkorte Mendel. Considerable testimony was introduced to show that Cora Doodkorte Mendel was the housekeeper of Albert Mendel and for her services he paid her the sum of

$7.50 per week, and among her duties as an employee she was to accompany Albert Mendel during the Winter months when he called upon the Florida trade soliciting business. It was advanced that there was little probability of robbery and violence if a woman accompanied Albert Mendel as he carried on his person frequently jewelry of the approximate value of $50,000.00.

It is next contended that a common-law marriage was not entered into because Cora Doodkorte Mendel applied to a hospital in Tampa to have her mother admitted and treated for some ailment as a charity patient. The preliminary papers necessary for the admission of her mother to the hospital required a number of questions to be answered. Among them was the question whether or not Cora Doodkorte Mendel was a widow or married, and to this particular question she answered to the effect that she was a widow. The record shows that she applied to the Tax Assessor's office in the City of Tampa for a widow's exemption and for a number of years obtained a widow's exemption from taxation, both in the City of Tampa and in Hillsborough County between the years 1933, the date of the alleged marriage, and January, 1938, the date of the death of Albert Mendel. It is argued that Cora Doodkorte Mendel, if the wife of a wealthy man, would not be the recipient of charity at the Municipal Hospital at Tampa.

The record shows that Albert Mendel executed and delivered deeds and contracts affecting realty located within the State of Florida and at no time did Cora Doodkorte Mendel sign said instruments as his wife, but he always referred to himself as a widower. Likewise, Cora Doodkorte Mendel signed instruments

affecting realty but always signed her name in said instruments as a widow. Many of these transactions are explained upon the theory that Albert Mendel desired to keep the marriage a secret, and when signing instruments Cora Doodkorte Mendel would sign as Cora Doodkorte, a widow, upon the request of Albert Mendel, as testified to by Mrs. Morton.

Counsel for appellant contends that since the marriage ceremony was entered into it was a binding obligation and could not be dissolved except by death or a decree of the court, and to sustain this position cited authorities, viz.: Cargile v. Wood, 63 Mo. 501, Am. Rep,; Badger v. Badger, 88 N. Y. 546, 42 Am. Rep. 263; Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826; Hullet v. Carey, 66 Minn. 327, 61 Am. St. Rep. 419; Peters v. Peters, 73 Colo. 271, 215 Pac. 128, 33 A. L. R. 24; Coad v. Coad, 87 Neb. 290, 127 N. W. 455. We think this contention has merit.

There is no dispute in the record as to the agreement of the parties to become husband and wife at common law and there is conflicting evidence to show a cohabitation thereafter until the death of Albert Mendel. It is my view that the lower court applied to the facts adduced the improper principle of law, because once the common law marriage is established the marital status continues until dissolved by death or a decree of the court.

## ON REHEARING

PER CURIAM.—A rehearing was granted in this case by order of this Court entered on September 17, 1940. On the same date and in the same order the petition to remand the cause to the court below for the taking of additional testimony was denied. Subsequently the

cause was heard again before this Court on oral argument.

Upon careful consideration of all the questions raised in the petition for rehearing and upon the oral argument of the case, as well as the briefs of counsel, the court is of the opinion that its original judgment of affirmance of the decrees appealed from was fully justified by the record and should be adhered to.

Original judgment of affirmance adhered to and reaffirmed on rehearing.

BROWN, C. J., WHITFIELD, TERRELL and THOMAS, J. J., concur.

BUFORD and CHAPMAN, J. J., dissent.